Parties agree that to invoke state sovereign immunity, Mohila had to show that it was an arm of Missouri, but the state laws that Mohila invoked to meet its burden only show that Mohila is affiliated with the state. They do not show that it is an arm of the state, and those two things are not synonymous. That is why this Court looks to a host of factors to decide whether a state-affiliated entity is sufficiently tied to the state to invoke the state's sovereign immunity. Here, those factors point away from the conclusion that Mohila is an arm of the state. Mohila was established as an independent corporate body, and the state Supreme Court of Missouri has long held that such bodies are separate entities from the state, not part of the state itself. Mohila's independence is reflected in the control that it exercises over the selection and compensation of its corporate officers and its employees, and the control it has over its business policies, properties, contracts, and debts. Let me ask you on that point. Do employees of Mohila participate in the state retirement system? There's no evidence that they do. We do know from the statute that Mohila hires its own employees, but Mohila has not put anything in the record about their participation in the state employment system. Are Mohila employees subject to the merit system protections that apply to whatever protections apply to state employees? Not to my knowledge, Your Honor. I would point out in Tennessee, the court considered an entity that had the option of participating in the state system or not, and the fact that the entity had that option weighed against it being an arm of the state, and it weighed in favor of its autonomy. Here is nothing in the statute that describes whether Mohila's employees even have the option of participating in the state employment system, their compensation. We do know that Mohila sets its own compensation for its employees. That is in the statute. It's not bound by whatever the state laws govern the compensation and retirement benefits for its employees. There's no evidentiary record in this case. The district court's decision relied solely on the provisions of Missouri law that organized and set up Mohila. They grant Mohila a great deal of autonomy, as I was mentioning. Yeah, but they refer to Mohila as being a public instrumentality and performing a public function and refers to it as being a public instrumentality of the state, does it not? It does. In the cases where you'll have arm of the state analysis, you'll have some connection between the entity and the state, and I think in just about every case, that entity will be performing some positive function for the state. That has never been sufficient to tip the scales on all four of the steadfast factors in favor of finding an arm of the state. The other aspect of it, of course, is the third steadfast factor, which is whether Mohila's finances are independent of the state's, and I don't think there's any dispute as to that. It raises its own revenues. There's no evidence that it gets any subsidies from the state government. Isn't its ability to sell student loans subject to MDHE approval? No, as I read that provision, the only student loans that it has that it requires approval to sell are those that are guaranteed by the state. There's no evidentiary record as to how much of Mohila's portfolio consists of those loans, and in that situation, it appears the state is acting as its role as guarantor of those loans, as opposed to supervisor of Mohila's operations. But it's not negligible control. I mean, it suggests a sense, I mean, because there's revenue to be raised from selling those student loans, right? And it puts Mohila in a situation in which it is, at least in part, to take your point, in part, subject to the control of the agency, right? It is not, well, we don't have, I would point the court to the Oberg case, which had a similar situation where the state officials had veto power over the Pennsylvania Higher Education Loan Authority, and the Fourth Circuit held that that alone was not sufficient to make the Pennsylvania authority the norm of the state, sent it back for an evidentiary hearing, that evidentiary hearing confirmed that, in fact, the Pennsylvania authority was not an arm of the state. Well, I'm not suggesting that alone is sufficient. I'm saying that we're looking at how these factors cut, right, in the totality. I think that's right, and as the court recognized in Tennessee, when you have a state-affiliated entity that serves a state purpose, there are going to be some connections between the entity and the state, and if you have the type of connections that you, that are part and parcel of being a state entity, as opposed to a purely private organization, like a public, a for-profit corporation, you're going to have some connections. But that's never been the, in the Oberg case, the Fourth Circuit called it minor strings. This court in Hennessey, citing Oberg, called those types of ties of limited importance, and what it emphasized were the financial and operational, day-to-day operational independence of the entity, and the statutes, which are all that are, which is the only thing that's in the record, largely indicate that MOHILA operates on a day-to-day basis independently of state governance. Could I just ask, on the instrumentality of the state, the Supreme Court in Biden referred to MOHILA as being an instrumentality, a public instrumentality of the state, and I realize it's addressing standing, but would this court be bound by that if it's a dictum? I don't, I wouldn't say it's a dictum, it's also present, and we don't dispute that, it's present in the state statutes that define what MOHILA is. Doesn't that pretty much take care, at least, of the first Stedman, I'm sorry, steadfast factors? Not quite. I mean, a couple of things on that point. First of all, I think, well, the Supreme Court in Biden versus Nebraska, in footnote three, made very clear that its determinations as to MOHILA's status did not extend to other purposes, and it cited the state Supreme Court's decision in Menorah Medical Hospital, which held that MOHILA is not part of the state. It cannot be part of the state under the state constitution because it would be bound by provisions regarding its revenues and its credit that would not allow it to even operate. And so what Missouri has done, MOHILA was created two years after the Menorah decision, and what Missouri has done is say, we're going to create these separate corporate entities, separate bodies, they're public corporations, they're not private corporations, but they're separate bodies from the state so we can essentially get around these restrictions in the state constitution and allow MOHILA to operate its student loan business free from these restrictions. It gave it all the normal powers that corporations have with some restrictions. They're not a purely private entity, but these are the types of restrictions that one would normally see, I think, in some entity that is affiliated with the state. You keep saying affiliated, but what's the difference between an instrumentality and an arm? Well, the arm is, I think, I would say under the governing precedent in this court and the Supreme Court and all the other circuits, they look to a host of factors to determine whether the benefits of state sovereign immunity, which is a constitutional benefit that Congress cannot abrogate except in limited circumstances, should extend to state-created entities, state-affiliated entities, or whether the state has in fact set up that entity to be so independent from the state that it would essentially not be consistent with the purpose of protecting the state dignity and the state treasury to confer arm of the state status on those entities. And that's why the court engages in an extensive analysis of not just whether there are instrumentalities in a formal sense, which is the first steadfast factor, but also the second and third factors, which were outcome determinative in Hennessey and I think outcome determinative here. I would point out in Hennessey the court spotted the entity, the first and fourth steadfast factors, and still found that was not sufficient to make the entity an arm of the state. And you have a lot of the same characteristics in Mohio as you had in the hospital authority in Hennessey. Once again, it has the right to sue or be sued separately from the state. It decides which contracts it's going to enter into. It controls its own property. These are facts that are not disputed. It's employees it hires. We talked about the employees earlier. And it's financially independent from the state. It earns its own revenues, and there's no dispute that a judgment against Mohio would not put the state treasury at risk. Let me ask you about that judgment against Mohio. Where do we analytically place that? I mean, I understand from your briefing that you're placing that as the third steadfast factor. Why isn't it treated differently once you get beyond that threshold steadfast analysis? I mean, didn't Hennessey have something to say about that to suggest that that would be the case? Well, certainly in the second step of the analysis, you do consider whether the judgment run against the state. The second step is somewhat of a tiebreaker if all of the steadfast factors point in the same direction. Well, I thought if all of the steadfast factors pointed in different directions, you'd reach the second. Yes, I apologize. Yes, you're correct. I wouldn't say the court ignores it in the third steadfast factor because it seems a bit odd to consider the entity's financial independence and not even take a look at whether a judgment would run against the state. That said, we don't need that. I think the district court thought we needed the judgment rule to conclude that the third steadfast factor weighed in Mr. Good's favor. We don't need that because under the third steadfast factor, what the court looks at is how the entity obtains its revenues. Does it get subsidies from the state or does it earn its own revenues? Under state law, it needs to earn its own revenues and pay its expenses out of its own revenues, pay its debts out of its own revenues. So, counsel, on the second, we get to the second step factors. Why isn't the suit against Mohila an affront to the state's dignity? By the way, what exactly does that mean? The cases talk, refer to that. I don't think there's too many cases that turn on that question. It certainly includes hauling the state into court. So I think one can imagine a situation where somehow if you sue the entity, you somehow sue the state itself. That's not the case here. Mohila has a sue or be sued clause. There's no basis for concluding that Missouri is being brought into court when Mohila is brought into court. And Missouri law, in fact, by creating Mohila as a separate corporate entity and putting these firewalls, financial and operational firewalls between the state and Mohila, ensure that the state's dignity is not in any way impacted by a suit against Mohila. I would like to reserve the rest of my time for rebuttal if the court has no further questions. Yes. Good morning, Your Honors. May it please the court. Matthew Gouletz on behalf of the Higher Education and Loan Authority of the State of Missouri for Mohila. As counsel said, the issue in this case is whether Mohila is entitled to 11th Amendment immunity under the U.S. Constitution. And our position as detailed in the Supreme Court, at least as it pertains to the factual underpinnings, is that Mohila is an entity created by Missouri, governed by Missouri, and controlled by Missouri. And so the short answer is that Mohila is entitled to 11th Amendment immunity. Even before the Biden decision, and through its reason to order, that is the conclusion that the district court made. And as Judge Matheson pointed out, we think subsequent developments have only helped Mohila's argument through the Biden v. Nebraska decision last summer. You don't think that Biden, I thought it was Nebraska v. Biden, but either way, that doesn't resolve this matter, does it? I would agree that they're analytically distinct concepts. Okay. Sovereign immunity versus 11th Amendment immunity. I would point out that on the way to the Supreme Court, the Eighth Circuit, in assessing the character of Mohila under Missouri State law, did note that Mohila may well be an arm of the state of Missouri under the reasoning of our president. In terms of this question about sovereign immunity versus standing, I would point out, as your honors already know, Article III deals with what cases and controversies the federal court can hear. Article XI amends that to say citizens from one state can't sue another state in federal court. And even if the tests are a little bit different, I think the key is that there's substantial overlap in the inquiries that the court needs to undertake in employing those tests. And are you keying on the phrase public instrumentality? Yes, in large part, but also I think what you can do is you can take what the Supreme Court said in Biden regarding Mohila and the relationship with the state of Missouri, and you literally can graft most of that on to the Hennessey test in terms of the four factors. So our position, candidly, is Supreme Court has said Mohila is indeed part of the state of Missouri, end stop. But if you proceed to the four factors under the Hennessey test, the four primary factors, I think you can look at what the Supreme Court has said, and you can easily find that those factors weigh in Mohila's favor. Well, isn't the graft to the first factor? It's to the first factor, but I honestly believe you can go beyond that. I mean, you're exactly right. First factor, character of Mohila, Missouri says, or the Supreme Court says, indeed part of the state of Missouri. But the second factor is Mohila's autonomy and the degree of control the state has over Mohila. Well, the Supreme Court said, and I quote, Mohila is subject to the state's supervision and control. Noted that two of Mohila's seven board members are officials of the state agency, the MDHE. The other five are directly appointed by the board or appointed by the governor, removable by the governor. The Supreme Court says the state of Missouri has control over Mohila because it can dissolve it. Exact quotes from the Supreme Court, Mohila is, quote, governed by Missouri. Mohila is, quote, answerable to Missouri. So we think those statements in the, by decision, further support what the lower court found here, which is that Mohila does not have a great deal of autonomy subject to the state control. I think it also bears on the fourth factor, which we've always thought is a fairly straightforward and easy one. That's the determination of whether Mohila is concerned primarily with local or state affairs. The Supreme Court noted that Missouri established Mohila in furtherance of the statewide purpose, namely to perform the essential public function of helping Missourians access student loans needed to pay for college. On that point, all of Mohila's efforts are statewide in nature. Their board comes from the broader geography of the state of Missouri. And so we think if you take those findings by the Biden court, they really do have great import on the proper application of the Hennessy test. Do you have the same understanding of the record that Appellant does in terms of the issue of whether Mohila's employees are under the state retirement system, or whether Mohila's employees are subject to merit system protections? I do. To be clear, Mohila's employees are not state employees in the classic sense. The way it works functionally is that the governor appoints the board. The board appoints the executive officers, the director, the executive director, CEO of Mohila. And then they fill out the rest of the staff with employees. But to your questions earlier, they do not participate directly in the state retirement plan. They're not treated as state employees. Is the record solid about that, and you just know that? Or is there something in the record to address that? I'm not sure. You're testing my memory. That was addressed in the briefs to this court. I don't recall that the district court specifically looked at that. As your honors know, this autonomy control factor, I think Hennessy says you can look at as many as nine sub factors. I'm not sure. Obviously, the lower court didn't have the benefit of Hennessy at the time. She did look at a number of different issues, but I don't believe there was evidence about Mohila's employees in the record at that time. Okay. Counselor, can I get you to turn to the finances? Yes. Because that seems to be the factor potentially that your case is the weakest on. So I'm just wondering, for example, I know this is the second step, but the fact that a judgment here would not go against the state treasury and the fact, correct me if I'm wrong, the fact that it's basically financially independent. Yes. So I would push back only on the phrase financially independent. Okay. But with respect to your assessment of the judgment liability factor, I do not push back on the idea that it's our most vulnerable point. If Mr. Good's lawsuit, if he received a judgment or a settlement from Mohila, Mohila would pay that in the first instance. A couple of things I would point out in that regard. One, it's our view that Hennessy clarified that that inquiry, which I think you just commented on, goes to the twin reasons behind. But I mean, let's just assume that the four factors are mixed. Yeah. And we have to get to that factor. Yeah. So help me understand how you prevail when you concede that the judgment would not be against the state treasury. I would refer this court to prior decisions from this court. One being Sturdivant, which I believe is from 2000. One being Colby from 2017. I think Chief Judge Holmes was on the panel. Those are decisions where the court employed the full factors, but nevertheless found in favor of arm of the state immunity because the other factors weighed in favor of that finding. Okay. But help me understand then how the fact that the direct judgment would not be against Mohila, how do you get around that if that's kind of the tiebreaker at the end? Well, I think it's tough to answer because I think the first twin reason weighs in Mohila's favor, avoiding an affront to the state of Missouri. Okay. Well, maybe you can help me understand that. Okay. How is it an affront? It's an affront because of what, in large part, what the state of Missouri has said about Mohila. In the state of Missouri's brief to the Supreme Court, which the Supreme Court, although admittedly deciding a different issue, accepted, here's what the state of Missouri through the Attorney General's office says. Mohila is a state-created and state-controlled public entity that performs essential public functions for the state. As such, Mohila is part of Missouri. The state of Missouri further argued that it's part of state government because the state created it by special law, established its powers, assigned it to a state agency, preserved its authority over Mohila's assets, and retained the right to abolish Mohila. So I do agree with opposing counsel that this phrase, avoiding an affront to the state, is not particularly developed. But I think you can look at the state's recent actions and you can conclude that holding that Mohila is not entitled to immunity, especially given its statutory framework, would be an affront to the state. Well, and I'm wondering about that factor because, help me understand, maybe you're saying it's hard to give it a meaning, but how does it mean something more than the state now is declaring this an arm of the state? I'm not sure I follow that. I'm sorry. Well, I mean, what you're reading to me, the state has said this is an arm of the state. That's what we're here to decide. So what beyond that potentially could mean an affront to the state? Well, the only things that come to mind are that while not directly liable for a judgment, it's clear as laid out in Biden that financial harm to Mohila results in direct financial harm to the state of Missouri. So there may be an interest there. I didn't hear that. Now what? I said in Biden, the court found, while looking at standing, that a financial harm to Mohila is a direct financial harm to the state of Missouri, which is why they found that the state had standing. Direct financial harm, but in a different sense than Hennessy thinks of what financial harm would be, right? It's not direct in the sense that... Correct. I was more trying to explain how finding that Mohila is not entitled to 11th amendment immunity could be an affront to the state. I fully concede that there is not direct liability in several other circuits. They look more functional or practical liability. I think we'd have a stronger argument there. But the reality is, if you pin us to direct liability, we're on the hook for a judgment in the first instance. So there's this other entity, MOHIFA. Yes, sir. If MOHIFA is not a state entity or arm of the state, why would Mohila be? OK, well, there's some differences, I think. The first and easiest is, MOHILA, as counsel said, was created after MOHIFA and after the Menorah decision, as I recall. Used different language when describing MOHILA. With respect to MOHIFA, they used this language, they're declared to be performing a public function in behalf of the state. With respect to MOHILA, they said they're performing a public function and they're to be a separate public instrumentality of the state. In behalf of and of the state, we argue are different things. There's also significant differences in MOHIFA and MOHILA and how they operate under Missouri statutes that create them. MOHIFA statutes do not impose limits on bond issuances and financial restrictions to the degree that are imposed on MOHILA by statute. MOHILA does not provide money directly to the state as MOHILA does. And unlike MOHILA, MOHILA actually has two members of an executive agency of the state of Missouri on its board. The entity MDHE within which MOHILA is placed. And so we would argue that there's differences both in the definitional structure but also in terms of various things that are imposed on MOHILA and how they operate. What significance do we attach to the question of the state's ability to abolish MOHILA? I mean, is that really relevant at all? We're always talking about with these public creatures that have been created, the state can eliminate all of them. I mean, why does that weigh in the balance at all? I think it just goes in line with the other factors in terms of why there's control there. At the end of the day, the fact that they could just do away with MOHILA, I think helps further establish the control that's there. It is a point that the Supreme Court relied on in Biden. Whether it's more significant than that, I don't have a great response for you at this time. So with my time short, I would just say district court found three of the four. Even if you put Biden aside, district court put three of the four factors in MOHILA's favor. On the finances factor, the one that weighed against us, the court said it was neutral to slightly in our favor before addressing the judgment issue, which our position has now been moved to the twin reasons. And so we think the judgment should be affirmed just based on the application of the four primary factors. And I thank you very much for your time. Thank you, counsel. I'll just make a few quick points. First, just to reiterate, Biden versus Nebraska did not engage in any of the fact, did not consider any of the factors this court considers in determining whether an entity is an arm of the state, including its control over property, contracts, the right to sue or be sued, and the financial independence of the entity from the state. Opposing counsel mentioned MOHILA operates for the benefit of the state. I will point out that there's no, there's almost certain, MOHILA has 5.2 million federal accounts, student loan accounts, that it services. We don't have a geographic reach for that, but we suspect if there were evidence in the record, it would show that MOHILA has a nationwide reach, including into Kansas, as Mr. Good or Mr. Good is located. Opposing counsel confirmed that MOHILA's employees are not state employees. I would contrast that with the Fourth Circuit's decision in the Oberg cases, where the employees of the Pennsylvania entity were state employees and did participate in the state retirement plan, but nonetheless, that entity was not an arm of the state. And the last point I would make is to just refer the court to the Burris case in the Seventh Circuit, which involved a state lottery commission that has obvious financial benefits for the state, but nonetheless, that was not an arm of the state. The financial benefit to the state is not as much a relevant consideration as the entity's independence from the state, independence of state subsidies. If the court has no further questions, I'll stop there. Thank you, counsel. Thank you both for your fine arguments. As noted earlier, we'll take a ten-minute break and then we'll return. Thank you. Case is submitted. Court is in recess. Thank you.